UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-133-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| GRAYCO RENTALS, INC., | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Supreme Court has admonished that district courts deciding whether to exercise declaratory judgment jurisdiction should avoid "[g]ratuitous interference with the orderly and comprehensive disposition of [] state court litigation." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). The Sixth Circuit has taken this to heart, "h[olding] on a number of occasions that a district court should stay or dismiss complaints filed by insurance companies seeking a declaratory judgment as to their underlying state court lawsuits." *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 273 (6th Cir. 2007). Because there is no convincing reasoning to keep this run-of-the-mill indemnity dispute in federal court while a related state case is ongoing, Grayco's motion to dismiss is granted.

### BACKGROUND

Grayco Rentals rents out heavy equipment and trailers to move that equipment. R. 16, Attach. 1 at 2. On June 13, 2008, Grayco rented an excavator to Danny Rice, along with a trailer to transport it. *Id.* at 3. Grayco employees secured the excavator to the trailer and purportedly told Rice that it was safe to drive on the highway. *Id.*

Rice left Grayco with the excavator in tow. *Id.* at 4. While attempting to pass a slow coal truck, the trailer reportedly began to swerve erratically, causing Rice's truck to spin out of control and into the coal truck and a concrete barrier. He was seriously injured and sued Grayco in state court. *Id.*

Grayco holds an insurance policy with Nautilus Insurance Company. R. 17. That policy acknowledges that Grayco is in the business of renting out "earth moving equipment" and says Nautilus will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *Id.*, Attach. 1 at 8-9. Excluded from the policy's coverage, however, are injuries or damage stemming from "use or entrustment to another of any [] auto," *id.* at 12, which includes a "trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment," *id.*, Attach. 2 at 5. Based on this exclusion, Nautilus filed this declaratory judgment action to establish that it has no duty to defend or to indemnify Grayco. Grayco moved to dismiss on the theory that the state court is the more appropriate forum.

## DISCUSSION

Grayco is right. The most prudent course is for the Court to exercise its "unique[ly] br[oad] . . . discretion to decline to enter a declaratory judgment[.]" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). To begin, it is a rare case in which federal district courts should assert jurisdiction over an insurance company's declaratory judgment action to resolve indemnity issues ancillary to an ongoing state-court case. It is true that the Sixth Circuit has, at times, held that district courts have not abused their discretion by hearing these cases. Yet it has nonetheless

2

repeatedly advised that the best exercise of that discretion, in the mine-run of cases, is to respect the state court's ability to handle the matter. To repeat, the Sixth Circuit has "held on a number of occasions that a district court should stay or dismiss complaints filed by insurance companies seeking a declaratory judgment as to their underlying state court lawsuits." *Travelers Indemnity Co.*, 495 F.3d at 273. Similarly, it has held that "declaratory judgment actions seeking an advance opinion on indemnity issues are *seldom helpful* in resolving an ongoing action in another court." *Manley, Bennet, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986) (emphasis added). And it has also "question[ed] the need for . . . declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair an impartial manner." *Bituminous Casualty Corporation v. J & L Lumber Company*, 373 F.3d 807, 816-17 (6th Cir. 2004) (quoting *American Home Assurance Company v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986)). The message is loud and clear.

This preference for respecting state courts' capacity to resolve these ancillary matters is perfectly sensible. It gives teeth to the Supreme Court's instruction to avoid "[g]ratuitous interference with the orderly and comprehensive disposition of [] state court litigation." *Brillhart*, 316 U.S. at 495. And it reflects the reality that federal district courts are seldom in a better position to resolve state-insurance-law issues wound up with state-public-policy questions. *See Travelers*, 495 F.3d at 272 ("However, because Kentucky law is controlling, we conclude that Kentucky courts are in the better position to apply and interpret its law on these issues.");

*see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 561 (6th Cir. 2008) (holding that questions about state insurance law "implicate[] important state policies").

The Sixth Circuit's five-factor test for deciding whether to exercise jurisdiction does not support bucking this preference here. Those factors are: (1) Whether the declaratory action would settle the controversy; (2) Whether a declaratory judgment would increase friction between federal and state courts; (3) Whether an alternative, better remedy is available; (4) Whether a declaratory judgment would serve a "useful purpose in clarifying the legal relations in issue"; and (5) Whether the declaratory remedy is being sought merely for the purpose of "procedural fencing" or to "provide an arena for a race for res judicata." *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). In the end, these factors support dismissal.

**Factor One:** Resolving this declaratory judgment action will not settle the controversy. *Travelers*, 495 F.3d at 271-72. Far from it. While it would obviously "settle the controversy regarding the scope of insurance coverage" under Nautilus's plan, it would hardly "settle the controversy in the underlying state court litigation." *Id.* Indeed, the complaint does not even join all of the parties from the state court case. *Bituminous Cas. Corp.*, 373 F.3d at 814.

Citing *Scottsdale Ins. Co.*, 513 F.3d at 554-56, Nautilus unpersuasively argues that this case would, in fact, settle the "controversy"—the controversy immediately before this Court. R. 12 at 3-4. But while *Scottsdale* did hold that a declaratory judgment action can "settle the controversy" without resolving the dispute pending in state court, another panel of the Sixth Circuit disagreed. *Travelers*, 495 F.3d at 271-72. And this Court has adopted the *Travelers*

4

position.  In *Grange Mutual Casualty Co. v. Safeco Insurance Co. of America*, the Court explained that another of the five factors—whether the declaratory judgment action will help bring clarity to the legal issues at hand—more appropriately accounts for whether it will resolve the immediate controversy in district court.  565 F. Supp. 2d 779, 787-788 (E.D. Ky. 2008).  Otherwise district courts would twice consider the declaratory judgment's effect on the immediate controversy and never consider its effect on the state court controversy.  *Id.*

**Factor Two:**  Concern for "increase[d] friction between our federal and state courts and improper[] encroach[ment] upon state jurisdiction" also weighs against exercising jurisdiction here.  *Grand Trunk*, 746 F.2d at 326.  First, factual issues already before the state court *may* prove helpful to informed resolution of this declaratory judgment.  *Scottsdale Ins. Co.*, 513 F.3d at 560 (listing the importance of factual issues as the first subfactor for deciding whether state-federal friction is a concern).  That is, the primary disagreement here is whether Nautilus can escape providing coverage because its policy excludes compensation for bodily injuries or property damage stemming from use of "autos," which includes trailers.  Grayco contends that the damage did not stem from use of a trailer, but rather improper loading of equipment and that the policy covers damage stemming from Grayco's "equipment."  If Grayco proves correct that the policy would allow this distinction, then the Court will ultimately have to decide whether the state court case is really about the use of a trailer or the use of equipment.

Nautilus objects that the Court would not, in fact, need to reach that factual question because it only has to determine whether any of the allegations in the complaint "possibly might come within coverage" to decide whether it has a duty to defend Grayco.  R. 12 at 4; *see also*

5

*James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991) ("The insurer has a duty to defend if there is any allegation which potentially, possibly, or might come within the coverage of the policy. . . . The determination of whether a defense is required must be made at the outset of the litigation."). What Nautilus overlooks, though, is that its declaratory complaint asks the Court to decide more than simply whether it has a duty to *defend* Grayco. It specifically asks the Court to decide whether it actually has a duty to *indemnify* Grayco—to pay for this incident—which could require resolving the factual dispute described above. R. 5 at 5.

Second, the Kentucky state court is in a marginally better position to decide the issues in this case because all issues are before the state court and involve questions of state law. *Scottsdale Ins. Co.*, 513 F.3d at 560 (second subfactor). As far as the Court knows (the parties have identified no federal-law issues), the questions about Nautilus's duties to defend and to indemnify are all state law questions "with which Kentucky state courts are more familiar and, therefore, better able to resolve." *Bituminous Cas. Co.*, 373 F.3d at 815; *see also Travelers*, 495 F.3d at 272 ("However, because Kentucky law is controlling, we conclude that Kentucky courts are in the better position to apply and interpret its law on these issues.").

It is true that the parties have pointed to no novel state-law questions. And some courts have focused on the novelty of state law questions as one basis for measuring whether state courts are in a better position to handle them. *See, e.g.*, *Scottsdale Ins. Co.*, 513 F.3d at 560; *Travelers*, 495 F.3d at 272. But these cases do not say that state courts enjoy an advantage *only* over novel state-law issues. In *Bitumious Casualty Corp.*, 373 F.3d at 815, for instance, the

Sixth Circuit held that Kentucky was in a better position to resolve "questions of state law, with which the Kentucky state courts are more familiar," without immediately pointing to the novelty of the state-law issues. The court did then proceed to say the state-law issues were novel, but only as an additional reason the state court was in a better position to resolve the matter. *Id.*

Third, the issues in this declaratory judgment action "implicate[] important state policies." *Scottsdale Ins. Co.*, 513 F.3d at 561 (third subfactor). This is a case about an insurance contract, which the state "regulate[s] . . . for the protection of [its] citizens[.]" *Id.* And so interpreting that contract may implicate state insurance-law policies, a recognized source of friction.

**Factor Three:** Relatedly—and still further supporting dismissal—the plaintiff has an alternate, better remedy in state court. *Scottsdale Ins. Co.*, 513 F.3d at 561-62. Kentucky allows for declaratory relief. *Id.* at 562. Kentucky courts are the experts on Kentucky law and thus provide a better forum for these state-law contract disputes. *See Travelers*, 495 F.3d at 272 ("However, because Kentucky law is controlling, we conclude that Kentucky courts are in the better position to apply and interpret its law on these issues."). And even if, as Nautilus says, it may have trouble intervening in the state court case, R. 12 at 10, it could still file a separate declaratory action or file one at the "conclusion of the underlying state action." *Travelers*, 495 F.3d at 273.

**Factor Four:** It is unclear whether deciding this case would serve a truly "useful purpose" by clarifying legal relations among the parties. *See AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004); *Panhandle E. Pipe Line Co. v. Mich. Consol. Gas. Co.*, 177 F.2d 942, 944 (6th Cir. 1949). Yes, resolving the declaratory judgment action would clarify the legal

7

relations between Nautilus and Grayco and terminate the immediate dispute between them. (How could deciding a declaratory suit not clarify and resolve the issues in that suit?) And this Court has said this limited clarification, though it does little to crystallize the issues in state court, counts in favor of keeping the case. *Grange Mut. Cas. Co.*, 565 F. Supp. 2d at 787-88. But remember that clarification must serve a "useful purpose." *See AmSouth Bank*, 386 F.3d at 786. And it does not really do so here. The state court can also clarify these very same issues—perhaps better, with its state-law expertise and familiarity with this case. *AmSouth Bank*, 386 F.3d at 786 ("Its usefulness is therefore severely undercut by the presence of the Mississippi litigation."); *Bituminous Cas. Corp.*, 373 F.3d at 813-14 ("The declaratory judgment action in federal court could serve no useful purpose. The federal court could either reach the same conclusions as the state court, in which case the declaration would have been unnecessary . . . or the federal court could disagree with the state court, resulting in inconsistent judgments."). And the Court knows of no reason why the "declaratory plaintiff will suffer injury unless legal relations are clarified" here rather than in the original litigation. *Id.* Ultimately, keeping this case would do little but "cause [Grayco] to engage in litigation on two fronts." *Grange. Mut. Cas. Co.*, 565 F. Supp. 2d at 785 (citing *Panhandle E. Pipe Line Co.*, 177 F.2d at 944).

**Factor Five:** Ultimately, only the last factor clearly does not weigh in favor of dismissal. That is, there is no sign that Nautilus filed this complaint to spur a "race for *res judicata*" with the state court, particularly in view of courts' "reluctan[ce] to impute an improper motive to a plaintiff when there is no evidence of such in the record." *Scottsdale Ins. Co.*, 513 F.3d at 558 (internal quotation marks and citations omitted). But even still, Nautilus cannot count this as a

win. The Sixth Circuit has held that finding no improper motive under Factor Five simply means that the factor is neutral. *Travelers*, 495 F.3d at 272 ("Although no improper motive prompted this action, this factor is neutral.").

Ultimately, balancing these factors favors dismissal. At the very least, the first three weigh in favor of declining to exercise jurisdiction over the case. And the last two are neutral. Taking into account the preference for respecting state courts' jurisdiction over these matters, the impropriety of keeping this case is clear. Accordingly, it is **ORDERED** that Grayco's motion to dismiss, R. 8, is **GRANTED**, and this case is **STRICKEN** from the Court's active docket. A separate judgment shall issue.

This the 7th day of March, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge